UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/20/2014
```

------------------------------------------------------------------------X
                                                                        :
CHRIS THORNHILL et al.,                                                 :
                                                                        :
                                    Plaintiffs,                         :         13 Civ. 5507 (JMF)
                                                                        :
                    -v-                                                 :         MEMORANDUM
                                                                        :         OPINION AND ORDER
CVS PHARMACY, INC.,                                                     :
                                                                        :
                                    Defendants.                         :
                                                                        :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

        In February 2014, the parties advised the Court that they had reached a settlement in this

action, involving claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*

By Order dated February 18, 2014, the Court directed the parties to submit the settlement

agreement for approval by the Court with a joint letter detailing the basis for the proposed

settlement and explaining why it should be approved per the factors set forth in *Wolinsky v.

Scholastic, Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012).  (Docket No. 27).  The Court

further directed the parties to address the basis for any attorney's fee award and to provide

documentation to support such an award.  (*Id.*).  Finally, to the extent relevant here, the Court

advised the parties that it would not approve any settlement agreement containing a

confidentiality provision, unless the parties could show that there were reasons, specific to the

case, sufficient to overcome the common law right of access to judicial documents.  (*Id.*).

        The parties submitted a letter dated February 19, 2014.  (Docket No. 28 (attachment)

("Feb. 19 Letter")).  Representing that "the amounts [Defendant] is paying compensate Plaintiffs

for the full amount of alleged lost wages, including liquidated damages," the parties asserted that

"Court scrutiny [of their settlement agreement was] not required."  (*Id.* at 1).  The parties' representations aside, however, the letter provided insufficient information for the Court to assess the fairness and reasonableness of the settlement or the reasonableness of the proposed attorney's fee award.  Accordingly, by Order dated February 24, 2014, the Court directed the parties to submit additional information.  (Docket No. 28).  Further, the Court docketed the parties' letter, finding "no basis to keep [it] confidential as it plainly qualifie[d] as a judicial document subject to the presumption in favor of public access."  (*Id.* at 2 (citing *Wolinsky*, 900 F. Supp. 2d at 337-40)).  The Court reserved judgment on the parties' request to keep the settlement agreement itself confidential, advising that, should the parties wish to keep their agreement confidential, they must cite additional authority to support that request.  (*Id.*).

## SETTLEMENT APPROVAL

The parties submitted a supplemental letter dated March 7, 2014 (a copy of which is attached to this Order for reasons discussed below).  ("Mar. 7 Letter").  Notably, despite the parties' representation in their February 19, 2014 letter, the new letter makes clear that the settlement does *not* fully "compensate Plaintiffs for the full amount of alleged lost wages," let alone the full amount "including liquidated damages."  (Feb. 19 Letter at 1; Mar. 7 Letter at 2). Nevertheless, based on a review of the settlement agreement (a copy of which is also attached to this Order for reasons discussed below), the parties' two letters, and the parties' briefing on Defendant's earlier motion to dismiss (Docket Nos. 22, 25-26), the Court finds that the settlement — totaling $48,090.00 when combined with the amount that Defendant has agreed to pay in attorney's fees and costs — is fair and reasonable.

As discussed in *Wolinsky*, a court must assess the settlement of claims under the FLSA based on the totality of the circumstances, including:

> (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.

*Wolinsky*, 900 F. Supp. 2d at 335 (quoting *Medley v. Am. Cancer Soc.*, No. 10 Civ. 3214 (BSJ), 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010)).  Applying those factors here, the Court concludes that the settlement is fair and reasonable given the scope and nature of Plaintiffs' claims and range of possible recovery, as well as the risks and expenses involved in additional litigation (including the risk that the Court would have granted Defendant's still-pending motion to dismiss).  *See id*.  Additionally, although the FLSA places "strict limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *id.* (alteration in original) (internal quotation marks omitted), those concerns are not as pronounced when the plaintiffs no longer work for the defendant, as is the case here, *cf. Lujan v. Cabana Mgmt., Inc.*, No. 10 Civ. 755 (ILG), 2011 WL 3235628, at *2 (E.D.N.Y. July 27, 2011) (noting "the risk of explicit or implicit coercion in the employment context" in FLSA litigation); *Gortat v. Capala Bros., Inc.*, 07 Civ. 3629 (ILG) (SMG), 2009 WL 3347091, at *11 (E.D.N.Y. Oct. 16, 2009) (noting the heightened concern over coercion in FLSA litigation when plaintiffs "are involved in an ongoing business relationship with defendants, and . . . are dependent on defendants for employment"), *report and recommendation adopted by* 07-CV-3629 (ILG), 2010 WL 1423018 (E.D.N.Y. Apr. 9, 2010).

## ATTORNEY'S FEE AWARD APPROVAL

The parties also seek the Court's approval to allocate $25,000 of the settlement fund to attorney's fees.[1]  In evaluating an attorney's fee request, a court must consider: (1) counsel's time and labor; (2) the case's magnitude and complexities; (3) the risk of continued litigation; (4) the quality of representation; (5) the fee's relation to the settlement; and (6) public policy considerations.  *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).  In addition to considering those factors, commonly referred to as the "*Goldberger* factors," a court may use one of two methods to calculate attorney's fees: the "lodestar" method or the "percentage of the fund" method.  *See, e.g.*, *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010).  Either way, a court should be guided by the *Goldberger* factors when determining what are reasonable attorney's fees.  *See, e.g.*, *Baffa v. Donaldson Lufkin & Jenrette Secs. Corp.*, No. 96 Civ. 583 (DAB), 2002 WL 1315603, at *1 (S.D.N.Y. June 17, 2002).

After due consideration of all the *Goldberger* factors, the Court finds that the proposed attorney's fee award here is excessive.  Most significantly, the size of the requested fee in relation to the total settlement — approximately 52% — is unreasonably high.  In this Circuit, courts typically approve attorney's fees that range between 30 and 33⅓%.  *See Guzman v. Joesons Auto Parts*, No. 11 Civ. 4543 (ETB), 2013 WL 2898154, at *4 (E.D.N.Y. June 13, 2013)

---

[1]      In urging the Court to approve the proposed attorney's fees, the parties emphasize that those fees "were decided separately and apart from the award to Plaintiffs.  In other words, attorney's fees in this case [sic], they were not allocated from the recovery Defendant awarded to Plaintiffs."  (Mar. 7 Letter at 4).  In the Court's view, however, there is no legal or logical reason to view the attorney's fee award as distinct from the award to Plaintiffs; together, the two awards constitute the total amount of money Defendant has agreed to pay to resolve Plaintiffs' claims.  Accordingly, for purposes of reviewing the proposed settlement, the Court considered the total of the two awards; and similarly, the Court treats the request for approval of the proposed attorney's fee award as a request for approval to allocate a portion of the overall settlement to Plaintiffs' counsel as attorney's fees.  The Court also notes that, in the absence of viewing the settlement in that manner, it might well have not approved the settlement as fair and reasonable.

(collecting cases); *see also, e.g.*, *Silverstein v. AllianceBernstein LP*, No. 09 Civ. 5904 (JPO), 2013 WL 6726910, at *9 (S.D.N.Y. Dec. 20, 2013); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013).  Indeed, courts in this Circuit have reduced attorney's fee awards in FLSA collective action cases at least in part because the proposed awards exceeded that range.  *See, e.g.*, *Pla v. Renaissance Equity Holdings LLC*, No. 12 Civ. 5268 (JMF), 2014 WL 113721, at *2-3 (S.D.N.Y. Jan. 13, 2014) (reducing a fee award from 44% of the settlement fund to 33⅓%); *Cisneros v. Schnipper Restaurant LLC*, No. 13 Civ. 6266 (JMF), 2014 WL 67235, at *2 (S.D.N.Y. Jan. 8, 2014) (reducing a fee award from 40% of the settlement fund to 25%); *Guzman*, 2013 WL 2898154, at *4 (citing cases in reducing a fee award from 40% of the settlement fund to 25% as to one plaintiff and 20% as to another settling party); *cf. Mendez v. Radec Corp.*, 907 F. Supp. 2d 353, 358-59 (W.D.N.Y. 2012) (discussing proportionality of settlements to fee requests and reducing attorney's fees in part on that basis).  Although Plaintiffs' counsel's lodestar — $85,275 — is higher than the fee requested — $25,000 — that fact is "insufficient to justify either the application of the [lodestar] method or the award of a higher fee."  *Guzman*, 2013 WL 2898154, at *5.

Additionally, the case involves a relatively straightforward wage-and-hour dispute arising under the FLSA and NYLL.  Notably, in their letter, the parties themselves acknowledge that this case does not involve any "novel question of law" — that it is "a typical FLSA and state wage-and-hour law case" involving "the application of existing law."  (Feb. 19 Letter at 5).  Although the case was styled as a collective action, Plaintiffs never filed a motion for certification of a collective or a class action, and notices regarding FLSA claims were not distributed to other employees.  To be sure, Plaintiffs' counsel did have to brief Defendants' motion to dismiss, a consideration that, with other factors, arguably justifies an award at the upper end of the range of

common awards — namely, 33⅓% of the total settlement.  But, especially mindful of the Court's

responsibility to guard the rights of the opt-in Plaintiffs who presumably did not bargain at arm's

length to pay 52% of their recovery to Plaintiffs' counsel, *see City of Detroit v. Grinnell Corp.*,

560 F.2d 1093, 1099 (2d Cir. 1977) (discussing the Court's responsibility in class actions to act

"as a fiduciary who must serve as a guardian of the rights of absent class members"); *see also*

*Goldberger*, 209 F.3d at 52 ("The point is that plaintiffs in common fund cases typically are not

fully informed.  Nor are they able to negotiate collectively, or at arm's length.  This is why we

emphasized . . . that awards in these cases are proper only if made with moderation." (internal

quotation marks omitted)), anything above 33⅓% would be unreasonable.  Accordingly, the

Court awards attorney's fees totaling $16,030.00.  The difference between the proposed award of

attorney's fees and the reduced award shall be distributed among Plaintiffs on a *pro rata* basis.

### CONFIDENTIALITY OF SETTLEMENT AGREEMENT

Finally, as the parties made no attempt in their most recent letter to justify keeping either

the letter or their settlement agreement under seal, the Court finds that there is no basis to keep

those documents confidential in light of the common law right of access to judicial documents.

*See Wolinsk*y, 900 F. Supp. 2d. at 337-40 (explaining the common law right of public access as it

relates to settlement agreements in FLSA cases).  Accordingly, as noted, the parties' most recent

letter and their settlement agreement are attached to this Memorandum Opinion and Order.

The Clerk of the Court is directed to close this case.  All pending motions are moot.

SO ORDERED.

Dated: March 20, 2014
      New York, New York

                                JESSE M. FURMAN
                           United States District Judge



FELDMAN
MORGADO PA

Friday, March 07, 2014

**VIA U.S. MAIL & EMAIL**

Honorable Jesse M. Furman
United States District Court for the
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

**Re:     Chris Thornhill et. al. v. CVS Pharmacy, Inc.**
         **Case No.: 1:13-cv-05507-JMF**

Dear Judge Thurman:

        Pursuant to the Order dated February 24, 2014, Plaintiffs and Defendant submit this supplemental letter to demonstrate the fairness and reasonableness of the proposed settlement between the parties and the stipulated attorney's fees.

### Calculations of What Damages Plaintiff Would Have Be Entitled To

        Plaintiffs have been paid all or substantially all of the overtime wages they were entitled to be paid.  Plaintiffs claimed that during their employment at CVS they were required to clock out and continue working during their designated thirty-minute meal break.  Additionally, Plaintiffs claimed that they did not receive compensation for $1 - 8$ hours of overtime work performed each week, while employed by the Defendant, and during the relevant statute of limitations period.[1]  But like most Plaintiffs, they lacked time records to get an exact amount.

---

[1] Further, Plaintiffs Thornhill and Drews claimed they should have received a night deferential (increase hourly rate of .25 - .50 cents per hour on overnight shifts) on their unpaid minimum and overtime wage claims.

*Writers Contact Information:*          *dmorgado@ffmlawgroup.com*          *Mailing Address:*

BANKERS TRUST CO. BUILDING          WWW.FELDMAN-MORGADO.COM          NEW WORLD TOWER BUILDING
14 WALL STREET                                                              100 N. BISCAYNE BLVD,
20TH FLOOR, SUITE 2040                      QUI TAMS                        29TH FLOOR, SUITE 2902
NEW YORK, NEW YORK 10005                     PENSIONS                       MIAMI, FLORIDA 33132
                                            SECURITIES
                                          WAGE & HOUR
(212) 355-3555  DD                        CLASS ACTIONS                     (305) 222-7853  DD
(212) 991-8431  PH                      EMPLOYEE BENEFITS                   (305) 222-7850  PH
(212) 991-8439  FX                                                          (305) 384-4676  FX

FEDERAL TRIAL & CLASS ACTION LAWYERS

TAMPA | NEW YORK | GREENWICH | HOUSTON | JACKSONVILLE | WASHINGTON | MIAMI

During litigation the parties shared information to see how far apart their respective positions were, and after reviewing shift's they worked and clock-in and out records the following prospective estimate of damages became the negotiating point of reference:

| | Thornhill | Dorsey | Drews | Acosta |
|---|---|---|---|---|
| Shifts > 6 hrs | 402 | 76 | 695 | 632 |
| Wks Worked | 80.4 | 15.2 | 139 | 126.4 |
| Ave. Hr Rate | $11.40 | 9.35 | 10.15 | 10.13 |
| OT Rate | $17.10 | 14.03 | 15.23 | 15.20 |
| Min. Wage Owed | $2,291.40 (.5/day) | $582.69 (.82/day) | $2,821.70 (.4/day) | $3,201.08 (.5/day) |
| OT Owed | $10,998.72 (8 hrs/wk) | $213.26 (1 hr/wk) | $4,233.94 (2 hrs/wk) | $3,842.56 (2 hrs/wk) |
| Total Wages Claimed | $13,290.12 | $795.95 | $7,055.64 | $7,043.64 |
| Actual Settlement Payment | $11,535 | $472 | $6,003.00 | $5,080 |

Having calculated actual damages of each Plaintiff using the time card punches of each they engaged in several discussions of the possible world of damages that may be awarded.

In the above calculation, and solely for the purposes of settlement discussions, double damages were excluded, but a rate of 1.5 instead of half-time .5 (a rate Defendant insisted was applicable) was used. Further, the parties used a constant estimate of 6 hours per week, when the Plaintiffs estimated 1 – 8 hours of overtime per week. These were not so much compromises, but rather exercises the parties went through to determine what the realistic maximum amount postured by Plaintiffs was, assuming, of course, Plaintiffs were successful in proving all violations to the maximum penalties of the FLSA and NYLL. In the end, the "Total Wages Claimed" line in the above chart is accurate estimate of what the parties believed is the maximum exposure to the Defendant, should Plaintiffs be 100% successful.[2]

When the case was accepted, the undersigned accepted this case into the Class Action division, something that would not happen if there was not a real belief the case would be litigated for years. Indeed, the firm budgeted in excess of $500,000 in hourly fees and costs, had it been litigated to trial, and been converted into the Class/Collective Action foreseen.

---

[2] Further, in coming to the calculation, Plaintiffs, Thornhill, Dorsey, and Acosta, claimed violations under the FLSA and NYLL, so that a six year statute of limitations was applied as applicable, whereas, Drews, the FLSA's maximum three-year statute of limitations was adopted.

The Defendant's last offer was close, and it provided, at least arguable, all of the relief Plaintiffs could have been granted. Having considered the case and what was available to the Plaintiffs in the Defendant's last offer, and despite the fact that it would come at loss to Plaintiffs' counsel in attorney fee time invested, counsel for Plaintiffs recommend to his client it was in their best interest, and to accept the offer.

After making this recommendation, and discussing with each Plaintiff the offer, their case, and its strengths, weakness, evidence, and damages, each Plaintiff decided to accept the settlement offer and executed an Individual Approval Form.

## Reasonableness of the Proposed Attorney's Fee Award

The fees here are reasonable for several reasons: (1) they are $60,275.00 less than counsel would have received had he charged his clients an hourly fee; (2) they are offered by the Defendant to be paid as attorney's fees, accepted by Plaintiffs' counsel, with each Plaintiff's knowledge; (3) the FLSA states that a successful Plaintiff is to have their attorneys' fees paid by the Defendant; (4) Plaintiffs were successful in recovering substantially all of the damages they could realistically have recovered should they have prevailed on the merits; and (5) counsel for the Plaintiffs assumed the risk of not being paid at all, a risk Plaintiffs were not asked to bear, as their agreement was that Plaintiffs would not be responsible for any attorneys' fees or their lawyers' costs should this happen.

Transmitted separately by email, and marked as Exhibit A, are most of the contemporaneously recorded time entries for the case.[3]  Plaintiffs' counsel spent at least 189.5 hours on this case, which translates to $85,275.00 (at his typical rate of $450 per hour) or $60,275 less than he would have charged a client on an hourly engagement.[4]

Knowledge to the Plaintiffs is present here as evidenced by the Settlement Agreement, which clearly addresses the amount of costs and attorneys' fees (defined as the Fee Reimbursement) separate from and independent of the settlement amount that will go to Plaintiffs.   Plaintiffs thus had a clear understanding of the amount of compensation the Settlement Agreement contemplated their attorneys would receive, and Plaintiffs approved this amount.

---

[3] Exhibit A contains *most* of the records because during the course of this litigation, Plaintiffs' counsel, switched to a new practice management system and extracting some of this information provided to be both time consuming and difficult.  Additionally, the physical and electronic files were not reviewed to determine whether time was invested, but not clearly recorded.  In other words, the firm has a policy that every lawyer is to record their time contemporaneously, regardless of whether the case is billed hourly, or taken on a contingent basis. The hours from the print out are those hours.  However, if a review is performed, it would be expected to reveal at least some additional work performed but never entered into the system.

[4] Plaintiffs' contemporaneous time records have been submitted in camera.

Further, the attorney's fees provided to Plaintiff's Counsel were decided separate and apart from the award to Plaintiffs.  In other words, attorney's fees in this case, they were not allocated from the recovery Defendant awarded to Plaintiffs.  And as noted above, the FLSA provides that in addition to any amount awarded to Plaintiffs, the court shall allow reasonable attorney's fee to be paid by Defendant.  *See* 29 U.S.C. § 216(b).  Similarly, the Agreement here provides attorney's fees in addition to the proposed settlement to Plaintiffs.

Counsel's regular rate of $450 (the rate used in his calculation) is reasonable under a lodestar test because the fee was stipulated to, and because even a rate one third of his traditional rate, *e.g.,* $150 per hour, multiplied by the hours invested, would be more than the fees being paid in this agreement.  When this happens, the Court need not engage in strict review of a fee ward.  *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (internal citations omitted). (According to the Southern District of New York, "[w]here the fees are set as part of negotiations between the parties, 'there is a greater range of reasonableness for approving attorney's fees.'")

But notwithstanding the stipulated fee, the rate would be reasonable based of the experience of counsel, risk in accepted the case, and diversion from counsel's attention from other cases, plus when comparing the rates of similar lawyers in Manhattan.  *See, e.g. Garcia v. Oasis Legal Fin. Operating Co. LLC*, 608 F. Supp 2d 975, 980 (N.D. Ill. 2009) (determining reasonableness of rate by considering rates in the "local area").  The undersigned is a founding shareholder of his multi-state office firm, with approximately 40 employees.  He is managing shareholder of the firm's Miami and New York City Offices, and head of the firm's Class Action Division that represented the Plaintiffs in this case.  He has been recognized for his work in employment, ERISA, and wage and hour law and has been a contributing editor to the American Bar Association's Fair Labor Standards Act supplement reports publication for the past two years.  He regularly bills at a rate of $450 per hour in both Miami, Florida and New York City, New York, spending time in both. Exhibit B contains the Professional Biography of Dale Morgado.[5]

According to the Second Circuit, the number of hours an attorney spent on a case is presumably a reasonable rate. *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012) (Furman, J.) ("[w]hile there is a strong presumption that the "lodestar" amount — that is, the number of attorney hours reasonably expended times a reasonable hourly rate — represents a reasonable fee the court may adjust the fee award upward or downward based on other considerations") (internal citations omitted).

Thus, Feldman Morgado accepted a significantly discounted fee in light of the work

---

[5] Exhibit B contains practice areas, education, admissions, case experience, and writing and speaking experience of Attorney Dale Morgado.

performed on this case, for the benefit of their clients, and recovered substantially all of the relief their clients would have been entitled to had they gone to trial.

## Conclusion

In conclusion, the Parties believe the proposed settlement and proposed attorney's fee award is fair and reasonable.  As discussed above, each Plaintiff was made whole as a result of the proposed settlement.  All Plaintiffs prefer to settle this case and dismiss their claims rather than continue litigation.  Plaintiff's attorney's fees were decided separate and apart from the settlement of Plaintiffs' claims.  The attorney's fees to Feldman Morgado have been significantly discounted from the original loadstar calculation.  This letter has been reviewed by Counsel for the Defendant and is being submitted without any objections by the Defendant.

/s/ Dale J. Morgado
 Dale J. Morgado, Esquire
FELDMAN MORGADO, P.A.
14 Wall Street
20th Floor, Suite 2040
New York, New York 10005
T: 212-991-8431
F: 212-991-8439
E: dmorgado@fmlawgroup.us

4831-3069-0841, v. 1

EXHIBIT B



# FELDMAN MORGADO PA



**DALE J. MORGADO**

Managing Shareholder – Miami / New York

*Chair, Complex Litigation & Class Action Division*

Direct Miami (305) 222-7853

Direct New York (212) 355-3555

Email: dmorgado@ffmlawgroup.com

Dale Morgado heads the firm's complex litigation and class action division. His federal law practice is national causing him to litigate in a number of cities across the United States.  A frequent flyer not just for cases, he also manages both the firm's Manhattan and Miami office.  Relying on his MBA, Juris Doctorate, and experience from practicing with both boutique and hundred-plus lawyer firm's—he is able to advocate for his clients having gained experienced on both sides of the bench.

## LEGAL ELITE HONORS

In 2011, Mr. Morgado was selected as a member of Florida Trend's "Up and Comer" in the yearly "Florida Legal Elite" rankings which nominates Florida's top attorneys. The publication recognizes less than 1.8 percent of active Florida Bar members in the state who are nominated by their peers as "those attorneys who are held in the highest regard and whom they would recommend to others," according to Florida Trend.

## SEVEN FIGURE LAWYERS MEMBERSHIP

In 2013, Mr. Morgado was inducted into "Seven Figure Lawyers"™ – a collective list of lawyers who have received verdicts or settlements of $1,000,000.00 dollars or more.  Mr. Morgado obtained verdict for his clients to be invited into this organization.

## THE JOURNEY

He began clerking for Phipps P.C. about twelve years ago, only to soon join one of Boston's 50 largest law firms, Deutsch, William, Brooks, Derensis & Holland.  After attending law school in Connecticut, he began practicing as an attorney at the Hartford office of the nationally recognized ERISA class action firm of Moukawsher & Walsh.  Later he moved to Miami to join the 170-lawyer firm Gunster, Yoakley & Stewart, serving as associate counsel in its employee benefit practice group.  Ready to lead, he helped found Feldman, Fox & Morgado in 2009 and remains with the firm today.

### Practice Areas

*Class Actions*

*Qui Tams*

*Employment*

*ERISA - Employee Benefits*

*FLSA – Wage & Hour*

*Securities*

### Education

*J.D. – University of Connecticut*

*M.B.A. – University of Massachusetts*

*B.S.B.A. – Suffolk University*

### Admissions

*US Court of Appeals 11th Circuit*

*US Court of Appeals 2nd Circuit*

*US Court of Appeals 3rd Circuit*

*US Dist. Court, S.D. Florida*

*US Dist. Court, M.D. Florida*

*US Dist. Court, N.D. Florida*

*US Dist. Court, S.D. New York*

*US Dist. Court, E.D. New York*

*US Dist. Court, N.D. New York*

*US Dist. Court, W.D. New York*

*US Dist. Court, S.D. Texas*

*US Dist. Court, N.D. Illinois*

*US Dist. Court, D. Connecticut*

*US Dist. Court, E.D. Michigan*

*US Dist. Court, W.D. Michigan*

*US Dist. Court, E.D. Arkansas*

*US Dist. Court, W.D. Arkansas*

*US Dist. Court, D. Colorado*

*US Dist. Court, D. North Dakota*

*US Tax Court*

*State of Florida*

*State of Connecticut*

BANKERS TRUST CO. BUILDING
14 WALL STREET
20TH FLOOR, SUITE 2040
NEW YORK, NEW YORK 10005

(212) 991-8431
(212) 991-8439 Fax

WWW.FELDMAN-MORGADO.COM

Qui Tams
Pensions
Securities
Wage & Hour
Class Actions
Employee Benefits

NEW WORLD TOWER BUILDING
100 N. BISCAYNE BLVD,
29TH FLOOR, SUITE 2902
MIAMI, FLORIDA 33132

(305) 222-7850
(305) 384-4676 (FAX)

FEDERAL TRIAL & CLASS ACTION LAWYERS

TAMPA | NEW YORK | GREENWICH | HOUSTON | JACKSONVILLE | WASHINGTON | MIAMI

## Case Experience

Dale J. Morgado has been counsel of record in a number of cases.
Here is a list of some federal cases he has been involved with:

| Case Title | Case Number |
| --- | --- |
| *Richards v. Fleetboston Financial Corp et. al.* | 3:2004-cv-01638 |
| *Sparveri v. Rocky Hill* | 3:2005-cv-00376 |
| *Pugliese v. United Tech Corp* | 3:2006-cv-01013 |
| *Arivella et al v. Lucent Technologies, Inc. et. al.* | 1:2008-cv-10398 |
| *Belanger et. al. v. Connecticut State Employees' Retirement Commission* | 3:2008-cv-00584 |
| *Jefferson v. State of Florida Department of Corrections* | 8:2008-cv-01337 |
| *Lombardi et al v. HealthMarkets, Inc. et. al.* | 8:2009-cv-00914 |
| *Digital 1 Media, Inc. v. Almen et al* | 8:2009-cv-01097 |
| *Esfahani v. The District Board of Trustees of South Florida* | 2:2009-cv-14215 |
| *Synergy Healthcare Communications, Inc. et. al. v. Sudler & Hennessey, LLC* | 8:2009-cv-02072 |
| *Brown-Rarick v. Dayton Andrews Dodge Inc.* | 8:2009-cv-02487 |
| *Lacey v. Lakeland Regional Medical Center, Inc.* | 8:2010-cv-00010 |
| *Barretto v. Hoover Industries, Inc.* | 1:2010-cv-20284 |
| *Dingle v. City of Coleman et al* | 5:2010-cv-00053 |
| *Slyker v. Ablest, Inc.* | 8:2010-cv-00656 |
| *Blanton v. Bayport Inn, LLC et. al.* | 8:2010-cv-00735 |
| *Espanol v. Avis Budget Group, Inc.* | 8:2010-cv-00944 |
| *Deaguila v. Brighthouse LLC* | 8:2010-cv-01058 |
| *Jackson v. Advanced-Pro Communications et al* | 5:2010-cv-00210 |
| *Hickey v. Devens CPL, Inc.* | 4:2010-cv-10834 |
| *Brown v. McDonald and Company Insurance Agency, Inc.* | 5:2010-cv-00232 |
| *Groupware Solutions, Inc. v. GDKN Corporation, et al* | 0:2010-cv-60909 |
| *Cohen et. al. v. Sudler & Hennessey, LLC* | 1:2010-cv-04321 |
| *Dennison v. Dick Norris Buick Pontiac GMC, Inc.* | 8:2010-cv-01341 |
| *Ryder v. Total Document Management, Inc.* | 8:2010-cv-01404 |
| *Herrera v. Stepp's Towing Service Tampa, Inc.* | 8:2010-cv-01400 |
| *Turpin v. General Capital Partners, LLC* | 8:2010-cv-01415 |
| *Devenne v. Ignite Media Solutions, LLC* | 8:2010-cv-01414 |
| *Wilkinson v. Certified Protective Services, LLC* | 8:2010-cv-01460 |
| *Rigal v. Hearthstone Management, Inc.* | 8:2010-cv-01493 |
| *Elder v. Life Path Hospice/HPC Healthcare, Inc.* | 8:2010-cv-01560 |
| *Laico v. Suncoast Safety Council, Inc.* | 8:2010-cv-01709 |
| *Mercado v. The Health Center of Hudson, Inc.* | 8:2010-cv-01772 |
| *Regional Local Union No. 846, AFL-CIO et al* | 1:2010-cv-05564 |
| *Moak v. Joe Allen Miami Beach LLC* | 1:2010-cv-23304 |
| *Cheney v. Connecticut General Life Insurance Company et al* | 3:2010-cv-01646 |
| *WADE v. Armstrong Relocation, Florida, LLC.* | 0:2010-cv-62030 |
| *Freeman v. Key Largo Volunteer Fire and Rescue Department, Inc.* | 4:2010-cv-10111 |
| *Cellucci v. Nova Southeastern University, Inc.* | 0:2010-cv-62557 |
| *Hernandez v. Simply Wheelz, LLC* | 1:2011-cv-20424 |
| *Armas v. Ignite Restaurant Group* | 3:2011-cv-00147 |
| *Schenburn v. Big Lots Stores, Inc.* | 2:2011-cv-00098 |
| *James v. Progress Energy Florida, Inc.* | 5:2011-cv-00175 |
| *Hidalgo v. Caribbean Publishing Co., Inc.* | 1:2011-cv-21304 |
| *Shedrick et al v. District Board of Trustees of Miami Dade College* | 1:2011-cv-21457 |
| *Regional Local Union No. 846 et al v. Gulf Coast Rebar, Inc.* | 3:2011-cv-00658 |
| *Wong v. Novartis Pharmaceuticals Corporation* | 0:2011-cv-61269 |

FELDMAN MORGADO PA

| | |
|---|---|
| *Wong et al v. Novartis Pharmaceuticals Corporation et. al.* | 1:2011-cv-04749 |
| *Martinez v. Towncare Dental Partnership, INC.* | 1:2011-cv-22497 |
| *Vince v. Specialized Services, Inc. et. al.* | 8:2011-cv-01683 |
| *Rose v. City County Credit Union* | 0:2011-cv-61751 |
| *Paul v. Noble International Investments, Inc.* | 9:2011-cv-80899 |
| *Fonseca v. Commissioner of Social Security* | 8:2011-cv-01800 |
| *Corbin v. Hartford Life Insurance Company et. al.* | 3:2011-cv-01302 |
| *Langlais et. al. v. PennMont Benefit Services et. al.* | 2:2011-cv-05275 |
| *Mykoo v. NJAP Express Parts, Inc., et al* | 1:2011-cv-23011 |
| *Garcia v. Wellcare Health Plans, Inc. et al* | 8:2011-cv-02025 |
| *Barnett v. Murphy's Paint & Body Shop, LLC. et al* | 1:2011-cv-23207 |
| *Caporelli v. Ransom Everglades School, Inc. et al* | 1:2011-cv-23270 |
| *Synergy Healthcare Communications Inc. v. Scibilia et. al..* | 2:2011-cv-05679 |
| *Alpark v. 1220 Collins Ave, Inc. d/b/a The Webster* | 1:2011-cv-23639 |
| *Alpark v. 1220 Collins Avenue, Inc.* | 1:2011-cv-23642 |
| *Elliott v. Stoneybrook Golf & Country Club of Sarasota, Inc.* | 8:2011-cv-02319 |
| *Jones v. Nationshealth et. al.* | 0:2011-cv-62310 |
| *DeLeon v. Big Lots Stores, Inc.* | 1:2011-cv-23879 |
| *Beaty v. Bechtel Construction Co.* | 1:2011-cv-24076 |
| *Robertson v. Drug Abuse Comprehensive Coordinating Office, Inc.* | 8:2011-cv-02619 |
| *Antomarchy  v. Apple Express Courier, Inc. et. al.* | 1:2011-cv-24191 |
| *Molina v. CVS Pharmacy, Inc. et al* | 1:2011-cv-24459 |
| *Coffeen v. Simplexgrinnell LP* | 9:2012-cv-80016 |
| *United States of America et al v. Everglades College, Inc.* | 0:2012-cv-60185 |
| *LaMorell v. Lockheed Martin Corporation* | 1:2012-cv-20475 |
| *Sobalvarro v. G&K Services, Co.* | 8:2012-cv-00290 |
| *Stewart v. U.S.A. Auto Care, Inc. et. al.* | 0:2012-cv-60262 |
| *Wakefield v. Liberty Power Corp., LLC* | 0:2012-cv-60297 |
| *Willinsky et al v. Martin et al* | 8:2012-cv-00370 |
| *Kennedy et al v. Richard J. Geronemus, as Trustee et. al.* | 1:2012-cv-20916 |
| *Williams v. United States Foundry & Manufacturing Corporation* | 1:2012-cv-21027 |
| *United States of America et al v. Horizon Contractors, Inc. et al* | 1:2012-cv-21242 |
| *Godwin v. Prestige Property Maintenance, Inc.* | 0:2012-cv-60650 |
| *McWilliams v. Avis Budget Car Rental, LLC et. al.* | 1:2012-cv-21481 |
| *Bernzott v. CFL Pizza, LLC* | 5:2012-cv-00192 |
| *Lopez v. Setai Owners, LLC. et al* | 1:2012-cv-21487 |
| *Charbonneau v. Hartford Life and Accident Insurance Company* | 3:2012-cv-00602 |
| *Ingram v. Ocean Village Property Owners Association, Inc.* | 2:2012-cv-14145 |
| *Cook v. OTH Miami Inc et. al.* | 1:2012-cv-21837 |
| *Tabora v. GC Realty Advisors, LLC.* | 9:2012-cv-80526 |
| *Freier v. Raytheon Company* | 1:2012-cv-10969 |
| *DeFreitas v. AT&T Corp.* | 1:2012-cv-22137 |
| *Jackson v. F.I.R.S.T. Services Corp of Orlando et. al.* | 6:2012-cv-00980 |
| *Block v. Ignite Media Solutions, LLC* | 8:2012-cv-01434 |
| *Vivas  v. ZGA Aircraft Parts, Inc. et al* | 1:2012-cv-22421 |
| *Goldbaum et al v. Integrated Asset Services, LLC* | 1:2012-cv-01712 |
| *Leafgreen v. Prince Preferred Hotels, Alamosa, LLC et. al.* | 1:2012-cv-01717 |
| *Adams v. Mimac, LLC* | 1:2012-cv-11196 |
| *Houck et al v. Career Education Corporation et. al.* | 8:2012-cv-01506 |
| *Armour v. Surf Style Retail Management, Inc. et. al.* | 0:2012-cv-61376 |
| *Paquette v. Morrissey Construction Company et. al.* | 0:2012-cv-61381 |
| *Rosado v. eBay Inc.* | 5:2012-cv-04005 |
| *Vierday v. Humana Cares, Inc.* | 8:2012-cv-01734 |

FEDERAL TRIAL & CLASS ACTION LAWYERS

FELDMAN MORGADO PA

| | |
|---|---|
| *Blue Spike, LLC  v. Texas Instruments, Inc.* | 6:2012-cv-00499 |
| *Lytle v. Lowe's Home Centers, Inc.* | 8:2012-cv-01848 |
| *Tetreault v. Budget Rent A Car Systems, Inc.* | 2:2012-cv-13692 |
| *Menkal v. Integrated Asset Services, LLC* | 1:2012-cv-02329 |
| *French vs Shackleton, LLC* | 8:2012-cv-02021 |
| *Wilson v. Jackson Memorial International et. al.* | 1:2012-cv-23237 |
| *Roybal v. Integrated Asset Services, LLC* | 1:2012-cv-02384 |
| *Cushman v. Devry University, Inc.* | 6:2012-cv-01405 |
| *Bernard v. Allied Barton Security Services, LLC* | 1:2012-cv-23516 |
| *Dunsing v. Stevens Ford, Inc.* | 3:2012-cv-01411 |
| *Esposito v. UNUM Life Insurance Company of America* | 3:2012-cv-01448 |
| *Miller v. GHD Enterprises Corp. et al* | 1:2012-cv-23717 |
| *McFadden v. Camelot Inn Miami, LLC et. al.* | 1:2012-cv-23985 |
| *Fulton v. Liggans* | 4:2012-cv-03268 |
| *Barber v. McGuires Beautiful Outdoors, Inc. et. al.* | 8:2012-cv-02621 |
| *Reddish v. Paragon Care, Inc.  et al* | 8:2012-cv-02714 |
| *Ruehling v. Florida Department of Health et. al.* | 8:2012-cv-02724 |
| *Porter v. City of Sarasota et al* | 8:2012-cv-02770 |
| *Nobel v. McGuires Beautiful Outdoors, Inc. et. al.* | 8:2012-cv-02873 |
| *Valdez v. All American Security Services, Inc.* | 1:2012-cv-24556 |
| *Clase v. American Fasteners, Inc. et al* | 1:2013-cv-20013 |
| *Blue Spike, LLC  v. Anviz Global, Inc.* | 6:2013-cv-00039 |
| *Herrera v. Avis Budget Car Rental, LLC et. al.* | 1:2013-cv-20335 |
| *Beaubrun v. Tropical Resorts, Inc.* | 8:2013-cv-00288 |
| *Smyth v. Ayama, Inc. et. al.* | 3:2013-cv-00130 |
| *Pipino v. Taxprep1, LLC* | 5:2013-cv-00076 |
| *Melver v. Check 'N Go of Florida, Inc.* | 1:2013-cv-20528 |
| *Gutierrez v. High Tech National, Inc.* | 1:2013-cv-20634 |
| *Arce v. Checkmark Insurance, Inc. et. al.* | 1:2013-cv-20936 |
| *Martin v. The Children's Home Society of Florida* | 1:2013-cv-20937 |
| *Wroten v. American Trades Institute of Florida, Inc.* | 1:2013-cv-21029 |
| *Farricy v. The Prudential Insurance Company of America* | 6:2013-cv-00513 |
| *Yarbrough v. T.S. Global Label, LLC et. al.* | 1:2013-cv-21180 |
| *McKeithan v. Church Pension Group Services Corporation* | 1:2013-cv-02607 |
| *Munoz v. Leoni et. al.* | 1:2013-cv-21580 |
| *Perez v. Inkolor, Corp. et al* | 1:2013-cv-21584 |
| *Greenaway et al v. Apple-Metro, Inc. et. al.* | 2:2013-cv-02818 |
| *Bauers v. Hartford Life Insurance Company* | 3:2013-cv-00769 |
| *Suarez v. Joe Bonilla Associated, Inc. et. al.* | 1:2013-cv-21920 |
| *Quintana v. Ghost Armor, LLC et al* | 1:2013-cv-22059 |
| *Jackson v. Home Team Pest Defense, Inc.* | 6:2013-cv-00916 |
| *Rivero v. Icon Prospects, Inc. et al* | 6:2013-cv-00939 |
| *Broughton v. The Central Charter School Foundation, Inc. et al* | 0:2013-cv-61355 |
| *ST. Gerard v. Infinity Sales Group LLC* | 9:2013-cv-80631 |
| *Thomas v. Mallen et al* | 1:2013-cv-22269 |
| *Castro et al v. City of Miami et al* | 1:2013-cv-22661 |
| *Colonia v. Mean Cycles, Inc. et al* | 1:2013-cv-22716 |
| *Johnson et al v. Avis Budget Car Rental, LLC. et. al.* | 1:2013-cv-11796 |
| *Cardoza v. Golden Group Interiors, LLC et. al.* | 1:2013-cv-22753 |
| *Thornhill v. CVS Pharmacy, Inc.* | 1:2013-cv-05507 |
| *Rodriguez v. John J Martin Jr. M.D., P.A. et. al.* | 1:2013-cv-23222 |
| *Woodley v. CVS Pharmacy, Inc.* | 2:2013-cv-05152 |
| *McAree v. Advanced Surgical Associates et al* | 2:2013-cv-14380 |

FEDERAL TRIAL & CLASS ACTION LAWYERS

FELDMAN MORGADO PA

| | |
|---|---|
| *Feinman v. MD1 Services FL, LLC et. al.* | 9:2013-cv-80980 |
| *Maximovskikh v. Johnson Controls Inc., .* | 0:2013-cv-62179 |
| *Swarn v. Bobby's Liquors, Inc. et al* | 1:2013-cv-23638 |
| *Wakefield v. Citizens Information Associates, LLC et. al.* | 1:2013-cv-23754 |
| *Prue v. Hudson Falls Post No. 574 et. al.* | 1:2013-cv-01280 |
| *Solorzano v. Productions Plus, Inc* | 2:2013-cv-14568 |
| *Moya v. Target Enterprise, Inc.* | 1:2013-cv-01377 |

## WRITING & SPEAKING

Contributor, American Bar Associations Subcommittee (Fair Labor Standards Act) 2013 and 2014 Mid-Winter Reports

Contributor, American Bar Associations Subcommittee (Employment Retirement Investment Act) 2007 Mid-Winter Report

Author, "Economic Consequences to Companies, States, and Municipalities Sponsoring Pension Plans from the Recent Market Losses and Potential ERISA Fiduciary Liability to Investment Advisers that Follow." April 2009 Employee Benefit Plan Review

Author, "The Death Tax – How Will Obama's Tax Plan Affect Your Estate Plan." Published in December 2008 LeMieux Report

Co-Author, "Blessings Point to Cash Balance Prosperity for Interested Advisers." Published in the September 2008 Employee Benefit Adviser

Author, "Sell it But Don't Overstate it Unless You Want to Get Sued: When Does ERISA Liability Attach." Published in the July 2008 Employee Benefit Adviser

Co-Author, "The Pension Protection Act Brings Sweeping Changes." Published in the 2007 Connecticut Bar Association Employment Quarterly Vol. 13 Issue 2

Co-Author, "A Federal Agency Says You Are Disabled…And A District Court Agrees, The Relevance of Social Security Disability Findings in ERISA Disability Insurance Benefit Litigation." Published in the 2007 Connecticut Bar Association Employment Quarterly Vol. 13 Issue 3

Speaker, presenting "Privacy and Social Media in the Workplace "- for Sterling Education's 6th Annual Fundamentals of Employment Law  on October 1, 2013

Interviewee , NPR's Marketplace on privacy in the workplace, aired November 15, 2014

FEDERAL TRIAL & CLASS ACTION LAWYERS

## CONFIDENTIAL AGREEMENT FOR GLOBAL SETTLEMENT AND DISMISSAL WITH PREJUDICE OF PENDING LITIGATION

This Confidential Agreement for Global Settlement and Dismissal with Prejudice of all Pending Litigation (the "Agreement") is made and entered into by and between each and every PLAINTIFF, as defined in this Stipulation, by their attorneys, Feldman Morgado, PA and any and all associated law firms of record, collectively referred to as "Feldman Morgado"), on the one hand, and Defendant CVS PHARMACY, INC., all of its past, present, and future parents, subsidiaries, companies, divisions, and affiliates, and other current or former related entities thereof (collectively, "CVS"), on the other.

I.   **STIPULATED RECITALS.**

    **A.**    On August 7, 2013, Plaintiff Chris Thornhill filed a civil Complaint entitled *Thornhill, et al. v. CVS Pharmacy, Inc.*, Case File No. 13-5507 (the "Lawsuit"). The Lawsuit, which is pending in the United States District Court for the Southern District of New York, alleges that CVS violated the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the New York Labor Law, § 1 *et seq.* Specifically, named-Plaintiff Chris Thornhill alleges that CVS employed him as a Shift Supervisor, and that for a period of time during his employment, CVS did not pay him and certain other Shift Supervisors properly. Specifically, he claims that certain CVS policies and/or practices allegedly deprived him and them of compensation earned by virtue of the fact that he claims he and they worked in excess of forty (40) hours per week. As a result of the alleged non-payment, Thornhill additionally claims that it resulted in minimum wage violations under federal and state law.

    **B.**    On August 30, 2013, Akerra Dorsey and Kayla Acosta filed written consents to join the Lawsuit as a "party plaintiff" pursuant to Section 216(b) of the FLSA. On September 3, 2013, Michael Drews filed a written consent to join the Lawsuit as a "party plaintiff" pursuant to Section 216(b) of the FLSA.

    **C.**    In response to the Lawsuit, CVS filed a motion to dismiss the Lawsuit in its entirety. In response, Plaintiff filed an Amended Complaint, which CVS again moved to dismiss. While the second motion to dismiss was pending, the parties engaged in negotiations directed towards settlement of this Lawsuit. The terms and conditions of settlement reflected in this Agreement are a product of those negotiations, conducted at arm's length, by experienced wage and hour practitioners.

    **D.**    CVS denies any liability or wrongdoing of any kind associated with the

claims alleged in the Lawsuit. CVS contends that it has complied at all times with the FLSA and all state laws. Nevertheless, CVS has entered into this Agreement to avoid the cost and inconvenience of further litigation. Plaintiffs have entered into this Agreement because the settlement reflects a reasonable compromise of the parties' disputed issues, chiefly, if and to what extent Plaintiffs are owed unpaid wages, including overtime. Plaintiffs believe that the certainty of settlement is better than the uncertain outcome of protracted litigation.

E.   Plaintiffs, CVS, and their respective counsel, stipulate and agree that the terms and conditions of settlement set forth in this Stipulation are fair, reasonable, and in Plaintiffs' best interests. Nothing in this Agreement shall be construed or deemed an admission of liability or wrongdoing on the part of CVS or concession thereof on the part of Plaintiffs. Pursuant to Federal Rule of Evidence 408, this Agreement shall not be admissible in evidence in any proceeding; except that it may be filed in any litigation as necessary to approve, interpret or enforce this Agreement or the settlement and waiver of liability described herein, or in any subsequent action against or by CVS to support a stay or dismissal of such subsequent action, or to establish a defense of res judicata, collateral estoppel, waiver, release, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

## II.   DISMISSAL OF THE LAWSUIT.

Pursuant to the terms and conditions of this Agreement, Plaintiffs agree that the claims alleged in the Lawsuit may and should be dismissed by the Court **WITH PREJUDICE** (except as provided in Section IV(F) below) and without costs, except as provided in Section III, below. The parties will be responsible for their own costs and attorneys' fees except as otherwise provided in this Agreement.

## III.   SETTLEMENT CONSIDERATION AND TAXATION.

A.   In exchange for: (1) the approval of this settlement and all of its terms by the Court in a confidential, non-public manner sufficient to secure a court approved waiver of Plaintiffs' wage and hour claims; (2) the dismissal of the Lawsuit with prejudice; (3) Plaintiffs' execution of individual Settlement Approval and Release Forms ("the Release Forms") referenced below; and (4) the representations of Plaintiffs in this Agreement, and Feldman Morgado in Paragraph V and VII of this Agreement, CVS agrees to pay Plaintiffs the total aggregate sum of $23,090.00 (the "Settlement Amount"). In addition, CVS agrees to pay Feldman Morgado the total sum

of $25,000, which amount reimburses Plaintiffs for all attorneys' fees and costs associated with the Settled Claims, as further defined in Section V below.

**B.**   The parties agree that the Settlement Amount shall be allocated as follows:

   **1.**   The Plaintiffs shall be allocated the total sum of $11,545.00, as W-2 wages (the "W-2 Wages Portion"). CVS shall deduct the employee portion of all applicable withholding taxes and other amounts required by law from the sum of the W-2 Wages Portion allocated to each individual Plaintiff, and CVS will issue a W-2 form to each Plaintiff reflecting his or her allocated payment from the W-2 Wages Portion of the Settlement Amount.

   **2.**   The Plaintiffs shall be allocated the total sum of $11,545.00, as Form 1099 income for liquidated damages (the "Liquidated Damages Portion"), and CVS shall issue a Form 1099 to each Plaintiff reflecting his or her allocated payment from the Liquidated Damages Portion of the Settlement Amount.

   **3.**   Feldman Morgado has allocated the W-2 Wages Portion and the Liquidated Damages Portion of the Settlement Amount among the Plaintiffs on a pro rata basis, in consideration of each Plaintiff's hourly wage rate and employment tenure as a Shift Supervisor within the relevant limitations periods.

   **4.**   Feldman Morgado shall be allocated the total sum of $25,000 ($_____ plus costs in the amount of $_____ for Plaintiffs' legal fees and costs as Form 1099 income ("Plaintiffs' Legal Costs and Fees")). CVS shall issue a Form 1099 to Feldman Morgado, which shall provide its Tax ID to CVS's counsel, reflecting this payment.

**C.**   Plaintiffs shall be solely responsible for payment of any and all federal, state and local taxes due on the amounts payable under this Agreement, with the sole exception of CVS's statutory tax obligation under FUTA/FICA and any other applicable employer withholding obligation. Neither Plaintiffs nor Feldman Morgado will be eligible for or claim entitlement to any further payment, including any payment of attorneys' fees, except as otherwise provided by this Agreement.

**D.**   **Communication of Settlement Offers.**   Upon approval by the Court,

Feldman Morgado shall have a period of ten (10) calendar days to secure each Plaintiff's execution of a Confidential Settlement Approval and Release Form in the form attached as Exhibit A.

**E.**    **Dismissal of the Lawsuit.**  Within five (5) business days of receipt of the last signed Confidential Settlement Approval and Release Form, the parties will file a Joint Stipulation of Dismissal with Prejudice of the Lawsuit, requesting the Court to enter a Final Judgment of Dismissal.

**F.**    **Payment of the Settlement Amount.**

     1.    CVS shall make payment of the W-2 Wage Portions and Liquidated Damages Portions of the Settlement Amount, calculated in accordance with the Final Allocation, by forwarding two (2) settlement checks for each Plaintiff participating in the settlement to Feldman Morgado within ten (10) business days following the entry of Final Judgment of Dismissal of the Lawsuit. Said checks shall be valid for a period of six (6) months (180 days), after which the checks shall be void and CVS shall be entitled to retain any funds associated therewith.

     2.    CVS will forward a single check representing the Plaintiffs' Legal Costs and Fees to Feldman Morgado within ten (10) business days following the date that Final Judgment of Dismissal has been entered.

## IV.    WAIVER AND RELEASE OF CLAIMS AND COVENANT NOT TO SUE.

As a material inducement to CVS to enter into this Agreement, and in consideration of CVS's promise to make the payments set forth in Section III of this Agreement, each Plaintiff agrees to execute a Confidential Settlement Approval and Release Form that has been prepared by the parties' counsel and, in addition to imposing other obligations, expressly releases CVS from all claims asserted in the Lawsuit, as well as any federal, state, or local claims or causes of action, both past and present, known and unknown, involving, relating, or referring to alleged unpaid overtime, minimum or regular wages under federal law or claims therefore, including any and all claims, causes of action, and rights arising under the FLSA, as well as any and all claims, causes of action, and rights arising under analogous or similar state laws, rules, or regulations that establish a right to overtime, premium pay, or other wages; interest on any overtime or other wage payment claim; liquidated and/or any other form of punitive or penalty damages; and any other available monetary relief, including attorneys' fees, for failure to pay all monies due for hours worked through the date that each Plaintiff signs his/her

Settlement Approval and Release Form (the "Settled Claims"). Pursuant to such release of claims, Plaintiffs covenant and agree not to sue or bring any legal action, whether in federal court, state court, or arbitration, now or at any future time, against CVS with respect to any Settled Claims.

## V.   CONFIDENTIALITY / NON-DISPARAGEMENT / NO SOLICITATION.

    **A.**    Confidentiality. Plaintiffs and their attorney represent and covenant that they have not communicated or disclosed, nor will they communicate or disclose, the terms of this Agreement or the Release Forms, or the terms of any offers of settlement or any matter related to this Agreement or the Release Forms, to any persons other than: (i) to a spouse, provided such spouse is informed of the duty of confidentiality set forth in this Paragraph and such spouse agrees to abide by this duty of confidentiality, (ii) to an accountant, tax and financial advisor, or attorney, or any of their staff, if necessary for the rendition of professional services to any Plaintiff, provided such person is informed of the duty of confidentiality set forth in this Paragraph and such person agrees to abide by this duty of confidentiality, (iii) to the Court or a court in any action to enforce the terms of the Agreements, provided that such disclosure is protected from public disclosure by an appropriate confidentiality order, or (iv) to the extent expressly required by law, by the proper inquiry of a state or federal governmental agency, or by a subpoena to testify issued by a court of competent jurisdiction, in any of which events Plaintiffs agree, to the extent permitted by law, to notify, both telephonically and in writing via facsimile, and to provide a copy of any subpoena, order or written inquiry to David Jaffe, Senior Legal Counsel – Employment and Labor Law, CVS Caremark, One CVS Drive, Box #1160, Woonsocket, RI 02895, efax No. 401-652-0662, immediately, but in no event later than five (5) business days after he or she first learns of the obligation to testify or disclose information protected by this Paragraph, for the purpose of providing CVS the opportunity to obtain a protective order against Plaintiff's testimony or disclosure of the information protected by this Paragraph. **IF ASKED ABOUT THE RESOLUTION OF THE LAWSUIT, PLAINTIFFS AND THEIR ATTORNEYS MAY STATE ONLY THAT THE CIVIL ACTION WAS RESOLVED AND THAT HE OR SHE IS UNDER A DUTY OF CONFIDENTIALITY. PLAINTIFFS AND THEIR ATTORNEYS AGREE THAT A BREACH OF THIS PARAGRAPH CONSTITUTES A MATERIAL BREACH OF THIS AGREEMENT AND THE INDIVIDUAL RELEASE FORMS AND THAT DAMAGES ALONE WOULD NOT BE AN ADEQUATE REMEDY FOR SUCH BREACH.** This paragraph imposes no limitation on communications between Plaintiffs and their counsel.

    **B.**    Non-Disparagement. Plaintiffs acknowledge and agree that they will make no public or private statements, whether directly or indirectly, that are disparaging in any way of CVS in connection with the Lawsuit. CVS acknowledges and agrees that it will not authorize the making of any public or private statements, whether directly or indirectly, that are disparaging in any way of any Plaintiff in connection with the

Lawsuit.

    **C.**   <u>No Solicitation</u>.

        **1.**   Plaintiffs agree not to solicit or take any action to encourage or aid another individual, directly or indirectly, to file a complaint, charge or lawsuit against CVS.

        **2.**   Consistent with governing ethical rules, Plaintiffs' attorneys agree that they will not solicit, as that term is defined in governing ethical rules, in-person or by intermediary, professional employment from any prospective client employed, formerly employed or otherwise associated with CVS with whom Plaintiffs' attorneys have no family, close personal, or prior professional relationship.

    **D.**   <u>No Publicity</u>.  Plaintiffs irrevocably instruct their attorneys and their law firms never to disclose to any other person or entity and to hold inviolate all confidences (including information protected from disclosure by the attorney-client privilege) and secrets (including the existence and terms of the Individual Agreements and this Global Agreement.   In addition, Plaintiffs direct their attorneys, and Plaintiff's attorneys consequently agree, not to publicize this Agreement, any of the negotiations relating or leading thereto, or its resolution, including the terms of this Agreement or the Individual Agreements in any way.   This includes, but is not limited to, a direction not to communicate with the press in any way or issue any press release regarding the resolution of the Lawsuit and/or the alleged results achieved in any marketing materials, including any web site or other public media, but they may disclose the fact of the lawsuit, that they represented Plaintiffs and that the lawsuit has been resolved.  CVS shall have the right to disclose the settlement as may be required under federal or state securities laws or under generally accepted accounting principles.

## VI.   ENFORCEMENT.

    Each and every Plaintiff, recognizes that their agreement to be bound by the obligations under this Agreement and the Release Forms is a material inducement to CVS's willingness to enter into this Agreement and the Release Forms, and Plaintiffs acknowledge that CVS would not have entered into such Agreements absent such agreement by Plaintiffs.  In the event of any violation of this Agreement or the Individual Agreements, including but not limited to Paragraph V, Plaintiffs recognize and agree that CVS will be entitled to seek all appropriate relief, including both legal and equitable remedies, and that such violation will constitute immediate and irreparable harm to CVS.  A material breach of any part of Paragraph V by a Plaintiff entitles CVS to liquidated damages, equal to one half of the total aggregate amount paid to Plaintiff under this

Agreement.  Should Plaintiffs' attorneys materially breach Paragraph V, upon a final adjudication on the merits, CVS is entitled to liquidated damages equal to $50,000.00 per breach.  Plaintiffs and their attorneys hereby acknowledge that this amount is a reasonable pre-breach estimate of the damages to CVS should Plaintiff(s) and/or their attorneys breach Paragraph VI, and that consequently, CVS does not need to prove actual damages to be entitled to an award of liquidated damages.

## VII.   REPRESENTATIONS OF COUNSEL.

Feldman Morgado warrants and represents that as of the date of execution of this Agreement, they do not represent any other individuals who are Plaintiffs or putative plaintiffs to the Lawsuit whose claims are not resolved and/or addressed by this Agreement;

## VIII.  MISCELLANEOUS PROVISIONS.

A.   This Agreement, and any compliance with it, shall not be construed as an admission by CVS of any liability or wrongdoing whatsoever, or as an admission by CVS of any violation of any Plaintiff's rights or the rights of any other person under any order, law, statute, duty or contract whatsoever. CVS specifically denies and disclaims any liability to Plaintiffs or any other person for any alleged violation of Plaintiffs' rights, or the rights of any other person, or for any alleged violation of any order, law, statute, duty or contract by CVS.

B.   The validity of this Agreement and any of its provisions and conditions, as well as the rights and duties of the parties, shall be interpreted and construed pursuant to and in accordance with the internal laws, and not the law of conflicts, of the State of New York, except to the extent otherwise governed by the laws of the United States.

C.   This Agreement, the Exhibits attached hereto, and the documents expressly referenced herein, constitute the entire agreement between the parties concerning the subject matter hereof.  No extrinsic oral or written representations or terms shall modify, vary or contradict the terms of the Stipulation.

Date:  January 30, 2014

_____
Dale J. Morgado
FELDMAN MORGADO, pa
100 North Biscayne Boulevard
29th Floor, Suite 2902
Miami Florida
Telephone:  305-222-7850
Facsimile:  305-384-4674
Email:  dmorgado@ffmlawgroup.com

**ON BEHALF OF ALL COUNSEL FOR
PLAINTIFFS IN THE LAWSUIT**

Date:  ~~January~~ February 12, 2014

_____
James N. Boudreau
**GREENBERG TRAURIG, LLP**
2700 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: 215.988.7833
Facsimile: 215.988.7801

**AS COUNSEL FOR DEFENDANT CVS
PHARMACY, INC.**

EXHIBIT A

## SETTLEMENT APPROVAL AND RELEASE FORM FOR [NAME OF PLAINTIFF]

This Settlement Approval and Release Form ("Release Form") is executed by the undersigned, [NAME OF PLAINTIFF], with respect to wage and hour claims asserted against CVS Pharmacy, Inc., all of its past, present, and future parents, subsidiaries, companies, divisions, and affiliates, and other current or former related entities thereof (collectively, "CVS"), in a civil action now pending before the United States District Court for the Southern District of New York, entitled *Christopher Thornhill, et al. v. CVS Pharmacy, Inc.*, Case File No. 13-5507 (the "Lawsuit").

Having reviewed and agreed to the terms of the Confidential Agreement for Global Settlement and Dismissal with Prejudice of All Pending Litigation (the "Agreement") and all other court and other documents related to the Lawsuit to the extent I desired to do so, and having had an opportunity to confer with my counsel, I wish to participate in the settlement described in the Agreement and I wish to receive payment in the amount of $[ALLOCATED SETTLEMENT AMOUNT]. I understand that this settlement amount will come in two separate payments as described in Section III of the Agreement, and that all applicable withholding taxes and other amounts you are obligated to pay on these amounts will be withheld. Accordingly, I state the following:

1.      **Definition of CVS:** I understand that the term "CVS" as used in this Release Form includes CVS Pharmacy, Inc., and all of its/their past, present, and future parents, subsidiaries, companies, divisions, and affiliates, and other current or former related entities thereof, and all of its/their past, present, and future officers, directors, managers, employees, agents, members, insurers, legal counsel, and successors and assigns of said entities and persons and any related entity.

2.      **Settlement Amount:** I was employed by CVS as a Shift Supervisor, and during that time, I allege that I received less than all wages to which I was entitled, including amounts for alleged overtime compensation as a result of having worked more than forty (40) hours in certain weeks. I acknowledge that I have asserted federal and/or state law overtime, minimum wage and wage payment claims against CVS, and I wish to participate in the settlement of the Lawsuit, pursuant to the terms of the Agreement and this Release Form. I hereby agree to the dismissal of my claims in the Lawsuit **WITH PREJUDICE.** I agree that settlement in the amount of $[ALLOCATED SETTLEMENT AMOUNT] (the "Settlement Amount") is a fair settlement of all my disputed claims for overtime wages and related compensation against CVS.

3.      **Acknowledgment of Full Payment:** I hereby acknowledge and agree that, as a result of the payments made pursuant to the settlement of the Lawsuit as described in this Release Form and the Agreement, I have now been paid all wages and other compensation due in association with the claims I have alleged in this Lawsuit and that CVS does not owe me any further amounts for any time I may have worked. I further acknowledge and agree that I am not

owed any additional amounts in the form of penalties, liquidated damages, or other sums as a result of or derived from any claims I have alleged in this Lawsuit.

4. **Attorneys' Fees, Costs, and Taxes**: I understand that the amount of attorneys' fees and costs payable to Plaintiffs' counsel in this action have been separately agreed to and will not come out of the amount to be paid to me above. I understand that I am solely responsible for all taxes due on the amounts payable to me pursuant to terms of the Agreement and described herein, with the exception of CVS's tax obligation under FUTA/FICA. I hereby release CVS from, and agree to assume full responsibility to any federal, state, or local taxing authorities for any tax consequences, including interest and penalties, which may arise as a result the payments of the Settlement Amount by CVS, with the exception of CVS's tax obligation under FUTA/FICA. **I agree to indemnify and hold harmless CVS from and against any taxes, fines, penalties, interest, liens, claims, lawsuits, and any other liability whatsoever arising out of any such tax consequences.** I acknowledge and agree that CVS and its legal counsel have made no representations regarding the proper tax treatment of the payments set forth in Section III.B of the Agreement.

5. **No Admission**: I agree that the settlement set forth in the Agreement, and the action(s) to be taken by CVS pursuant to the Agreement, are a compromise settlement of a disputed claim or claims, and shall not be deemed or construed to be an admission by CVS of any violation of my rights, or of any violation of law, or of any wrongdoing whatsoever. I understand that CVS expressly denies any such violation, and has entered into the Agreement to avoid the time and expense necessary to defeat the disputed claim or claims.

6. **Release of Claims**: In exchange for payment of the Settlement Amount and by executing this Release Form, I hereby waive and release CVS from any and all claims asserted in the Lawsuit, or which I could have asserted in the Lawsuit, as well as any federal, state, or local claims or causes of action, both past and present, known and unknown, involving, relating, or referring to alleged unpaid overtime or minimum wages under federal or state law, including any and all claims, causes of action, and rights arising under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"); the New York Labor Law § 650 *et seq.*, the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA"), where such ERISA claims relate to, are dependent upon, or involve the alleged non-payment of wages resulting from violations of minimum wage, overtime, and meal and rest break laws; as well as any and all claims, causes of action, and rights arising under, involving, relating, and/or referring to similar state laws, rules, or regulations, including but not limited to any state statutory or state common law claims that establish a right to overtime, premium pay, or other wages; any claim related to meal or rest periods; interest on any alleged overtime or other wage payment claim; liquidated and/or any other form of punitive or penalty damages; and any other available monetary relief, including attorneys' fees, for failure to pay all monies due for hours worked (the "Settled Claims"). I hereby promise and agree not to sue or bring any legal action, whether in federal court, state court, or arbitration, now or at any future time, against CVS with respect to any of the Settled Claims. By executing this release, I recognize that I am waiving claims of which I may not be aware.

7. **Confidentiality**: I agree not to disclose, or cause or permit to be disclosed, any of the terms of the settlement of the Lawsuit to any individual or entity, other than my spouse (if

any), legal counsel, and tax advisor, except (1) to the extent necessary to report income to appropriate taxing authorities, or (2) in response to an order of a court or government agency of competent jurisdiction specifically requiring such disclosure. I further agree that my spouse (if any), legal counsel, and tax advisor shall be bound by this confidentiality provision, and that I will be responsible for any breach of this provision by any of them. In response to any inquiry from a third person or entity not otherwise referred to in this Section concerning the Lawsuit or the settlement, I agree to limit my response to a statement that the matter has been resolved.

8.   **No Assignment**: I agree that the release and promises contained in this Release Form and the Agreement bind me, my spouse (if any), my children (if any), heirs, executors, administrators, successors, representatives, assigns, attorneys, and all other persons and entities in privity with me. By executing below, I represent that no claim or cause of action covered by Section V of the Agreement and this Release Form has been assigned or given to anyone else and that no other person or entity has an interest in any such claim or cause of action, through subrogation or otherwise. **I agree to indemnify and hold harmless CVS from any further claim or suit (including attorneys' fees and other expenses incurred in the defense of such claim or suit) by or on my behalf, or on the behalf of my spouse, children, heirs, executors, administrators, or any other person or entity concerning any matter encompassed by the settlement of the Lawsuit.**

9.   **No Involvement in Actions**: I shall not hereafter directly or indirectly, or by the use or participation of another, counsel, assist, aid or abet any person (be it layman or lawyer) in the prosecution of any of the Settled Claims. I shall not hereafter receive or accept any compensation, directly or indirectly, from any person, firm or corporation for the prosecution of any such claim whether by suit or settlement. I shall not voluntarily (*i.e.*, absent subpoena or Court order, or other legal process) testify, whether by deposition, affidavit, or in person, in any legal proceeding the claims, causes of action, and rights listed in paragraph 6, in which CVS is a party or prospective party. [FOR DREWS ONLY:

Mr. Drews also agrees that because he will continue to be employed by CVS, he will submit any claim, complaint or grievance that he may have regarding the terms and conditions of his past or present employment (including, but not limited to, any claim for alleged unpaid wages) to CVS's Human Resources Department at least thirty calendar (30) days before he commences any formal legal action. The purpose of first submitting any claim Mr. Drews may have to CVS's Human Resources Department is to provide CVS with a reasonable opportunity to cure the dispute, and Mr. Drews therefore agrees that he will not file or commence any claim or cause or action, in any forum, without first providing CVS at least thirty calendar (30) days in which to exercise such opportunity to cure. To the extent CVS does not cure the dispute, and Mr. Drews chooses to pursue his claim or cause of action further, he understands and agrees that final and binding arbitration will be the sole and exclusive remedy for any such claim or dispute, and that he may not join any such claim or dispute with the dispute of another employee in a class, collective or group action. Mr. Drews understands and agrees that arbitration under this agreement is limited to individual disputes, claims or controversies that a court of law would be authorized or have jurisdiction over to grant relief, and by agreeing to the use of arbitration to resolve his dispute, both CVS and Mr. Drews agree to forego any right each may have had to a jury trial on issues so covered. Mr. Drews and CVS also agree that such arbitration will be conducted before an experienced arbitrator chosen jointly, and will be conducted under the

Federal Arbitration Act and the procedural rules of the American Arbitration Association unless agreed upon otherwise.

10. **Construction, Severability and Governing Law**: I understand that my counsel and CVS' attorneys have negotiated the Agreement and this Release Form, and I have had an opportunity to confer with my attorneys before signing this Release Form. This Release Form shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any party. If any Section, sentence, or clause of this Release Form should be found unenforceable, it shall be severed and the remaining sections, sentences, and clauses shall be enforced in accordance with their intent, except to the extent that any portion of Section 6 is found unenforceable. In that event, CVS shall have a claim against me for the repayment of any sums paid pursuant to Section III of the Agreement and Section 2 of this Release Form. New York law, but not its law of conflicts, shall govern the validity and interpretation of this Release Form insofar as federal law does not control.

11. **Waiver of Breach**: I agree that one or more waivers of breaches of any covenant, term, provision, or Section of this Release Form shall not be construed as a waiver of a subsequent breach of the same covenant, term, provision, or Section, or as a waiver of a breach of any other covenant, term, provision or Section.

12. **Costs and Attorneys' Fees**: I understand and agree that, except to the extent stated in Section III.B.5 of the Agreement, each party to the Lawsuit shall bear his, her or its own costs and attorneys' fees associated with prosecution or defense of the Lawsuit, as well as the negotiation and preparation of the settlement. I understand and agree that I shall not be deemed a "prevailing party," whether for purposes of any attorneys' fees statutes, provisions or otherwise.

13. **Certification of Understanding**: I hereby represent and certify that I have: (1) carefully read this Release Form and understand its provisions; (2) been given an opportunity to discuss and negotiate the terms of this Release Form; (3) been given a reasonable period of time to consider this Release Form; (4) consulted with counsel prior to executing this Release Form; and (5) signed this Release Form knowingly and voluntarily of my own free will without duress or undue influence by any party.

Date:_____

Name (printed):_____

_____

Signature